Judge Owsley
delivered the Opinion of the Court.
[Absent Chief Justice Bibb.]
This appeal is prosecuted from a judgment recovered by the appellees upon the trial of the general issue in an action of ejectment, brought by the appellant in the circuit court of Woodford.
On the trial, the lessors of the appellant attempted to derive title under a patent which issued from the Commonwealth of Virginia to Robert O’Neal, the fourth of January, 1786, for one thousand acres of land, and introduced and read to the jury that patent, together With the following writings, to wit:
A letter of attorney from the patentee, O’Neal, bearing date the 5th of November, 1802, Authorizing James Hughes to execute, to Capt. John Craig, a release of all his right under the entry of one thousand acres, made for him by the said Craig, and refered to in a bill in chancery, filed by him, in a suit then depending in the General Court against the Said Craig, upon the said Craig assigning to him a bond he held on Col. Richard Young, far one thous- and acres in Gallatin county.
The deed of O’Neal to Craig for one thousand acres of land, dated the 26th of June, 1806, and purporting to have been made by Hughes, under a power of attorney from O’Neal, in consideration of an assignment, that day made by Craig to O’Neal, of Young’s bond for the conveyance of one thousand acres of land, about thirty miles from the mouth cf Licking.
The deed of John Craig to Lewis Craig, dated the 3rd of June, 1807.
Lewis Craig to John Jonitt.
O'Neal's deed to Craig excluded.
Assignment of error.
Grounds of objection to the deed of O'Neal excluded.
And the deed of Lewis Craig to John Jouitt; bearing date the 29th day of September, 1806.
The lessors of the appellant also introduced other evidence, as well written as parol, and after the appellees had likewise gone through their evidence, and the court had been asked by each party to instruct the jury upon points of law, the deed from O’Neal to John Craig was excluded from the consideralion of the jury, by a decision of the court, made upon the motion of the appellee’s counsel.
The propriety of the decision which excluded that deed from the jury, is questioned by the assignment of errors.
As the deed appears to have been executed by Hughes, as the attorney in fact for O’Neal, it was undoubtedly incumbent upon the court, in deciding upon its admissability as evidence, to ascertain whether or not, in making the deed of conveyance, Hughes exceeded the power confered upon him by O’Neal. For although the title may be conveyed by attorney, nothing is more clear than that the power to do so, must be derived from the holder of the title, and that if any thing, exceeding the power delegated, be done by the attorney, it has no effect upon the principal. In revising the decision of that court, therefore, we are necessarily led to the same enquiry.
And at the threshhold we would remark, that the deed which was excluded by the court, appears; on its face, to have been executed by Hughes in virtue of a power of attorney given to him by O’Neal, on the fifth of November, 1802, so that if Hughes possessed competent power to make the deed, his authority must have been derived from the letter of attorney of that date, executed by O’Neal, and to which we have already referred. The sufficiency of that letter of attorney to confer upon Hughes a power to convey the one thousand acres of land therein described, upon the happening of particular contingences, was not denied in argument; but it was contended, that there is nothing in the cause Conducing satisfactorily to prove, that the land ac *394 tually Conveyed by Hughes to J. Craig, is the tract which, by the letter of attorney, he was authorized to convey, or that the contingency, upon the happening of which, he was directed to convey, had in fact happened before the deed of conveyance was made. We, however, think differently.
Recital in the deed made by the attorney that the grantee had performed the condition on which the letter of attorney authorized the conveyance to be executed, held, under the circumstances here, to be evidence conducing to prove the fact.
Judicial notice of the distance of the mouth of Licking from Gallatin county.
Bill in chancery which had been brought by defendants against alienor of the plaintiff’s lessor, recognizing the title derived under a deed made by an attorney acting under a limited authority, being read in evidence, held to conduce to maintain the title.
*394 We admit that the.evidence upon this subject is not as strong and conclusive as might be desired; but there are. contained in the record numerous facts and circumstances, which, in our opinion, are calculated to satisfy any unbiassed mind, that in making the deed to Craig, the agent, Hughes, acted strictly within the limits of the power delegated to him by O’Neal, it was upon Craig’s assigning a bond which he held upon Col. Richard Young, for one thousand acres of land in Gallatin county, that Hughes was directed to convey to him; and the deed purports to have been made in consideration of Craig having, in fact, assigned Young’s bond; and although the land tor which the assigned bond on Young called, is not described in the deed to lie in Gallatin county, the number of acres is stated to be one thousand, and is described to lie about thirty miles from the mouth of Licking, between which and the county of Gallatin, we are bound, from the general history of the country, to know that there is not thirty miles. Whilst it is, therefore, conceded that the bond on Young is not, in every particular, described in that deed precisely in the same language that is employed in the letter of attorney, it must be evident, from a comparison of the two instruments, that there is nothing in the description contained in the deed which can justify an inference, that the bond on Young, for the assignment of which the deed was made, is not the bond, to obtain which, Hughes was empowered to convey’.
Rut to the contrary, when if is recollected, that there is no evidence in the cause conducing to shew that Craig ever held but one bond on Young, or that O’Neal owned any other land than that which is described in bed in the deed; when it is recollected, as is proved in the cause, that she ruly after the deed was made, Jonitt, the ancestor of part of the lessors of *395 ’the appellant, claiming under the title of O’Neal, brought an ejectment, and recovered judgment against Lettice Bowdry, one of the appellees, and the mother of the others; when it. is perceived, that after the recovery of Jouitt in that ejectment, a bill in equity was filed by Lettice Bowdry, in which she recognipes the title of Jouitt, derived under O’Neal; pnd that before her bill was brought, a bill had been filed by the other appellees, in which a like recognition of Jouitt’s title is made.
Long acquiescence of the principal in the possession under the conveyance, is evidence the conditions on which the attorney was to make the deed had occurred, and that he did not transcend his power.
Bill by the guardian of infants (read in evidence against them after full age, without objection) allowed to have effect.
When all these facts are perceived, and when it is furthermore recollected, that there is nothing in the cause conducing, in the slightest degree, to shew that O’Neal, in his life time, or his representatives since, have, for the space of near twenty years since the date of the deed, ever expressed any dissatisfaction with the conduct of Hughes in making the deed, or questioned the right of those claiming under that deed, every unbiassed mind must, we apprehend. be brought necessarily to conclude,, not only that the land described in the deed as the tract therein designed to be conveyed is, in truth, the one thousand acres which, by the letter of attorney, Hughes was empowered to convey, but that in point of fact, the bond held by Craig for one thousand acres in Gallatin county, is the same bond, for- the assignment of which to O’Neal, the deed was made by Hughes.
In the preceding remarks it will be perceived that we have adverted to the fact of recognition of Jouitt’s title, made in the. bill brought against him by part of the appellees whilst they were infants, and it might possibly be inferred that too much weight is intended to be given to that recognition; but to, prevent an inference of that sort, we would remark, that the fact has been adverted to not as one, if it stood alone, that would be entitled to any extraordinary weight, but as a circumstance calculated to strengthen the presumption raised by various other facts, that in making the deed, Hughes acted strictly within the scope of his authority; and for that purpose, we apprehend, the Bill was properly used in evidence.
Deed admitted.
Twenty years' possession relied on.
Evidence of the possession.
Recovery by Jonitt against Bowdry's widow, on the title of O'Neal, and proceedings afterwards under the occupant laws.
It follows, therefore, that the court erred in excluding the deed from the jury.
In the progress of the trial various instructions were moved for by each party, and the assignment of errors questions many of the opinions given by the court thereon, but as we suppose, the admission of the deed from O’Neal to Craig, as evidence, will, when the cause returns to the court below, remove most of the objections taken to the appellant’s right to recover, we shall barely notice some of the principal questions, which may probably again arise on another trial.
The appellees set up claim under a patent which issued from the State of Virginia, to James Bowdry, the 24th day of February, 1790, in virtue of a survey bearing date the 25th day of June, 1788; and rely upon a continued possession under that claim, for upwards of twenty years, as a bar to. the right of entry claimed by the lessors of the appellant, under the ad verse elder patent of O’Neal.
There was a contrariety of testimony before the jury, as to the precise ime when the possession was first taken by Janies Bowdry of the land; but evidence was introduced conducing to prove, that he settled on the land in 1786 or 1787; and that he continued to reside there until his death in 1807, and that Lettice Bowdry. his widow, and one of the present appellees, continued, with her family, to reside, upon the land, until after the commencement and termination of an ejectment. brought by Jouitt, claiming under the patent to O’Neal, the 9th March, 1808; that at the September term of that year, Lettice Bowdry appeared to the action, caused herself to be made defendant, and pleaded the general issue; that a trial was (hereupon had, and verdict and judgment rendered against her; that commissioners were then appointed, under the occupying claimant law, to assess the improvements, rents, &c. and report was afterwards made by the commissioners to the court. By that report, Jouitt was brought in debt, and executed bond with security for the same, as directed by law.
Writ of possession on Jouitss judgment, returned executed.
Suit in chancery—injunction to the judgment in ejectment-injunction dissolved and habere facias awarded.
Habere facias executed.
Demise had expired between the tests of the two writs of habere facias possessionem.
Lease of McConnel to Mrs Bowdry and Thomas
Renewal of the lease to Mrs Bowdry.
After this, it appears that a writ of habere facias possessionem issued in favor of Jouitt. upon the judgment; and upon that writ the sheriff returned. “executed the 2nd July, 1811. and possession then given to James Howard, the agent of Jouitt."
It also appears, that several suits in chancery were brought by the appellees against Jouitt for the land; in one of which, (the last decided.) an injunction was awarded against Jouitt’s judgment, in favor of Lettice Bowdry; and that, by consest of the parties) a decree was entered in 1819. dismissing the bill, with leave to Jouitt to sue out a writ of possession for the land.
A writ of habere facias possessionem accordingly issued, and was executed by the sheriff delivering possession to McConnell, the 22nd of February, 1820.
We should have remarked, that in the, ejectment brought by Jouitt, the demise is laid to have been made the last day of December, 1806, and to continue from thence, the term of ten years, next following; so that when the writ of habere facias possessionem issued, in 1820, the demise had expired; but the term of ten years had not elapsed, from the date of the demise when the first writ of possession issued in 1811.
After the last writ of possession was executed, and in April, 1820. an agreement which was reduced to writing, and signed and sealed by the parties, was entered into between LettiCe Bowdry and Thomas, of the one part, and McConnell of the other part, whereby the latter leased the plantation, including part of the land in contest, for the term of one year, to the former, and they, on their part, covenanted to pay a fixed rent.
At the expiration of that lease, McConnell again, by similar writing, leased the plantation to Lattice Bowdry, for another year. At the expiration of that lease, Mrs Bowdry refused to deliver the possession to McConnell, and this ejectment was brought against her, &c.
In ejectment against the heirs for land, that had been recovered by the alienor of the plaintiff’s lessor, in an ejectment against the widow, and of which possession had been delivered on a habere facias, but afterwards regained by the heirs, the computation of the tire to bar under the limitation can extend only up to the commencement of the action against the widow.
Evidence conducing to prove other facts, was also introduced, but the, foregoing, together with such as may be incidentally mentioned, will shew the application of the points of law about to be noticed.
We would premise, that in the remarks we are about to make, it is not designed to go into the enquiry whether or not, assuming the preceding facts to be established, the appellees have succeeded in shewing that neither of the, lessors of the appellant have a right of entry to the land patented to O’Neal. Our object will be only to notice some of the, principal points of law, which were contested at the bar in argument, and which may possibly again arise upon the return of the cause to the court below.
And in the first place we would observe, that if, under the statute, of 1796, limiting rights of entry, the appellees can succeed in defeating a recovery by the. appellant, it must be done by proving a continued possession by them, or those under whom they claim, for twenty years before the commencement of the ejectment, which was beought by Jouitt against Lattice Bowdry. Not, however, because the possession was not continued by her, after that suit was commenced, but because the limitation presented in the statute, could not, after suit brought, continue to run against the right of Jouitt. It undoubtedly will not be pretended, that on the. trial of that suit, the plaintiff’s right to recover could have been defeated by proving an adverse possession by the defendant, for twenty years, at the trial, if the possession had not, in fact, continued that long before the commencement of the action; and if, on that trial. the continuance of possession by the defendant in that suit, after it was commenced, could not be brought in aid of her prior possession, we apprehend that it is equally incompetent for the appellees, in this case, to avail themselves of the possession held by Mrs. Bowdry, after the commencement of that ejectment, so as by uniting it with her prior possession, to bar, by the lapse of time, the same, right of entry that was then held by Jouitt. and now claimed under him by the lessors of the appellant. For it is apparent from the evi *399 denoe, that in the ejectment, brought by Jouitt, judgment was not only recovered by him. but that the possession was afterwards delivered to his agent by the sheriff, under a writ of habere facias possessionem, which regularly issued upon that judgment; so that, having obtained the possession under that judgment, Jouitt must we apprehend, at least, as respects any effect the lapse of time can have on his title, be considered as having been possessed of the land from the time the suit was commenced by him.
Return of the sheriff of the execution of the writ of habere facias, is conclusive between the parties.
Where the heir relies on the possession of the widow in bar of an ejectment, the sheriff’s return executed of a habere facias on a judgment against her in favor of the alien or of the les-or, is conclusive on them.
It is true, the fact of Jouitt having obtained the possession no otherwise appears, than from the sheriff’s return, made upon the writ of possession; but Leftice Bowdry was a party totheaction brought by Jouitt; and in the ease of Smith vs Hornbeck, 3 Marsh. 392, it was held, that between the parties, the return of the sheriff upon a writ of habere facias possessionem, that he had delivered possession to the plaintiff, was conclusive of the fact; and that decision we still think correct.
But it is said the appellees, except Lettice Bowdry, were not parties to the ejectment brought by Jouitt, and that although the return of the sheriff may conclude her, it is contended, that it is not evidence against the other appellees; and that of course, they should not be prvented from insisting upon the possession which was continued after the commencement of Jouitt’s action, in defence to the present action. It should however be recollected, that Lettuce Bowdry is the mother of the other appellees, and widow of their deceased father; and of course, upon the decease of her husband, site became entititled to the possession of the plantation, rent free, until her dower should be assigned her; and not only so, but the evidence conduces strongly to prove, that she actually held the possession and enjoyed the profits of the land, as she was at liberty to do, without the control of any other person, in point of fact, therefore, the possession, such as it was, must, we apprehend, after the death of her husband, be considered as having been held by Mrs. Bowdry; and the other appellees, though they were not parties to the ejectment brought by Jouitt, yet, as they *400 are attempting to derive benefit from her possession they ought not to be allowed to avail themselves of any portion of that possession which can not be re-relied on by her. and must be bound by any evidence bearing upon the fact of her possession, that is conclusive upon her.
Tenant cannot deny his landlord’s title, though he was in possession when he accepted the lease.
It follows, therefore, that neither of the appellees can avail themselves of the continuance of the possession by Lettice Bowdry, after the commencement of the ejectment by Jouitt against her, for the purpose of baring the right of entry then set up by him, and now claimed by the lessors of the appellant.
But with respect to Lettice Bowdry, there are other facts proved in the cause, which in our opinion, excludes her from controverting the right of McConnell, tone of the lessors of the appellant,) to recover in the present case. She appears on two successive years to have leased the land of McConnell, and as the possession has never been since restored by her, according to well settled principles, she is estopped to contest his title. That a tenant is not, in the general, allowed to dispute the title of bis landlord, was not denied in argument, hut it was said, that it appears from the lease accepted by her from McConnell, that she was, at the time, both leases were made, residing upon the land; and it was argued that unless the possession is received from the landlord, the tenant is at liberty to controvert his title; and hence it was inferred that Mrs. Bowdry is not concluded from questioning McConnell’s title, by her acceptance of either lease. But as respects her right to dispute the title of McConnell, we apprehend, that it is totally immaterial whether or not Mrs. Bowdry was, in point, of fact, residing upon the land at the date of the lease. By accepting the lease and stipulating for rent, she as effectually recognized the title and possession of McConnell to the land upon which she then resided, as she could possibly have done, if at the time she had not lived upon the land, and had, after the lease was made, entered under McConnell. After accepting the lease she was the tenant of McConnell; *401 holding the possession under and for him. and in a proceeding like the present, can not, until she restores the possession to him, be permitted to deny, that at the making of the lease he had title.
Rule the same as to sub tenants.
With respect to Thomas, who also was a joint lessee with Mrs. Bawdry in the first lease, the same principle applies, unless the possession which he held under the lease has been restored to McConnell; hut if he has yielded that; possession to McConnell, and has not, afterwards, in any way held under Mrs. Bowdry, he should not. by either lease, be prevented from controverting McConnell’s title.
Upon the whole, we are of opinion, the judgment must he reversed with cost, the cause remanded to the court below, and the verdict of the jury set aside. and further proceedings there had, not inconsistent with this opinion.